2024 IL App (1st) 221841

THIRD DIVISION
October 23, 2024

No. 1-22-1841

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DENNIS COLON, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 2019 L 001676 |
| ILLINOIS CENTRAL RAILROAD COMPANY d/b/a CN; | ) | |
| Defendant-Appellee. | ) | Honorable Daniel A. Trevino, Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Dennis Colon filed a two-count complaint alleging negligence under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2018)) (count I) and common-law negligence (count II) against defendant Illinois Central Railroad Company (Illinois Central). The trial court granted defendant's motion to dismiss count I and defendant's subsequent motion for summary judgment on count II. On appeal, plaintiff first contends that the trial court erroneously granted Illinois Central's motion to dismiss count I when the court found that his successful workers' compensation claim was a bar to any subsequent claim pursuant to FELA. Plaintiff also contends that the trial court erred in granting Illinois Central's motion for summary judgment as

to count II based upon the trial court's application of judicial estoppel. For the following reasons, we reverse the judgment of the trial court and remand this cause for further proceedings.

¶ 2                                              BACKGROUND

¶ 3      On February 14, 2019, plaintiff filed a two-count complaint against defendant Illinois Central. Plaintiff alleged that he was a mechanic/welder for his employer, Illinois Central, which he stated was a position involved in interstate commerce and therefore subject to the requirements of FELA. Plaintiff also stated that he was "nominally employed by" Illinois Central's "wholly-owned subsidiary, Autoport (Michigan) Limited" (Autoport). In the alternative, plaintiff alleged that Autoport was a "servant of [Illinois Central]" and employed him as a mechanic/welder. Plaintiff stated that, on February 16, 2017, he suffered personal injuries resulting from repetitive trauma caused by opening "many heavy and poorly maintained rail car doors" due to various wrongful acts or omissions on the part of Illinois Central. Plaintiff stated that his injuries included "disability or loss of normal life," pain and suffering, medical expenses, and lost wages.

¶ 4                              The Motion to Dismiss (Count I)

¶ 5      On May 15, 2019, Illinois Central filed its motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2018)). Illinois Central argued that plaintiff could not bring a FELA claim against Illinois Central because plaintiff's employer was Autoport. In the alternative, Illinois Central argued that plaintiff was "estopped" from recovering under FELA because he had already received workers' compensation benefits from Autoport.

¶ 6      Illinois Central attached two affidavits to its motion to dismiss. The affidavit of Sarah Lewis, Autoport's labor relations manager, stated in relevant part that plaintiff held the position of "mechanical repair (welder)" with Autoport and was not an employee or servant of Illinois Central and that Illinois Central "did not have any powers over [him]." In particular, Lewis averred that

Autoport (1) hired plaintiff to work for Autoport; (2) trained him; (3) supplied the tools to perform his job; (4) paid his wages and benefits; (5) approved his requests for vacation and sick days; (6) had the power to "direct, control, and supervise his work"; (7) had the power to terminate his employment; and (8) paid workers' compensation premiums for his benefit. Lewis further stated that plaintiff's employment application, direct deposit slips, and time-off requests had either the Autoport logo or its name and address.

¶ 7    The second affidavit attached to Illinois Central's motion to dismiss was from Lance Osmond, Illinois Central's "Region Manager, which includes the Autoport facility." Osmond stated that Autoport performed "mixing services" for Illinois Central but there was no agreement between Illinois Central and Autoport under which Illinois Central would "borrow[ ]" Autoport employees. Osmond further stated that Autoport was an independent contractor and not a servant of Illinois Central. Osmond added that plaintiff was an employee and servant of Autoport and not Illinois Central. Osmond said that, among other things, Illinois Central did not (1) hire plaintiff to work for Autoport, (2) pay his salary, (3) supply his tools, (4) have the power to control or supervise his work, or (5) have the power to terminate him. According to Osmond, Illinois Central had no supervisors on the Autoport premises to supervise or inspect Autoport's work. Osmond maintained that he was the only Illinois Central employee on those premises and did not direct, control, or supervise the work of Autoport's employees.

¶ 8    On June 24, 2019, plaintiff filed his response to Illinois Central's motion. In substance, plaintiff denied the allegations in Illinois Central's motion, arguing that (1) Autoport was itself a servant of Illinois Central and (2) he was not estopped from filing a FELA claim against Illinois Central after having filed a claim for workers' compensation benefits regarding the same injury. Plaintiff attached his affidavit to his response in which he stated that Illinois Central's safety inspectors "[f]requently" inspected his work and would relay any instructions to an Autoport

3

manager, who would then convey that information to plaintiff. Plaintiff added that Illinois Central would arrive monthly and "always after an injury" to perform "surprise" inspections of Autoport's work. Plaintiff further stated that Osmond would "regularly" give instruction to plaintiff's manager, who would pass along that information to plaintiff. Plaintiff declared that Illinois Central employees, including Osmond and a safety inspector, had "the authority to discipline [him,] including but not limited to terminating [his] employment with Autoport."

¶ 9 On August 27, 2019, the trial court issued a written order granting Illinois Central's motion to dismiss count I. The order did not indicate whether the parties had presented argument or whether the court had been "advised." In its ruling, the court stated, "Taking all well-pleaded facts as true: Autoport, not Illinois Central, employed [plaintiff]." The court thus struck paragraph five in plaintiff's complaint, which alleged that Illinois Central employed plaintiff. The court then added that, "even if Illinois Central exerted sufficient control to bring this matter within the 'borrowed servant' or 'dual servant' doctrines—and the court declines to determine whether it did—sufficient evidence shows that" plaintiff received workers' compensation benefits for the injuries at issue, warranting dismissal of count I.

¶ 10                     The Motion for Summary Judgment (Count II)

¶ 11 On August 30, 2021, Illinois Central filed a motion for summary judgment as to count II. Illinois Central sought summary judgment on two grounds. First, it argued that plaintiff lacked standing to pursue his claim. Specifically, Illinois Central noted that, at the time of the injury underlying his complaint, plaintiff had an ongoing bankruptcy proceeding.[1] Illinois Central added that, pursuant to the Bankruptcy Code, the claim was the property of plaintiff's bankruptcy estate but plaintiff failed to disclose the claim during the proceeding. Illinois Central thus stated that,

---

[1] The record on appeal includes an order of the bankruptcy court confirming plaintiff's Chapter 13 bankruptcy plan (see 11 U.S.C. § 1301 *et seq.* (2012)), dated March 28, 2016.

since plaintiff failed to disclose the claim, it remained the property of the bankruptcy estate and plaintiff lacked standing to bring the claim in his individual capacity and for his own benefit.

¶ 12     Illinois Central's second ground was that, even if plaintiff had standing to bring the claim, he was judicially estopped from doing so because he "took two positions in two separate judicial proceedings, both under oath, that are totally inconsistent." Specifically, Illinois Central argued that, although plaintiff filed his negligence claim during the pendency of his bankruptcy proceedings, he nonetheless represented to the bankruptcy court that he had " 'no claims against third parties, whether or not [he had] filed a lawsuit or made a demand for payment.' "

¶ 13     In response, plaintiff first argued that, because his bankruptcy petition had been dismissed for failure to make payments, the dismissal revested plaintiff with standing.[2] With respect to judicial estoppel, plaintiff argued that the fifth element of judicial estoppel (*i.e.*, whether he succeeded in the first proceedings and received some benefit from it) was not met because the dismissal of his petition resulted in his debts not being "permanently avoided via discharge." Plaintiff further argued that, even if all elements of judicial estoppel were met, the trial court should exercise its discretion not to apply the doctrine because there was no evidence that plaintiff had "an intent to deceive or mislead" because "the [lawsuit] did not exist when he filed his bankruptcy petition."

¶ 14     On September 15, 2022, the trial court entered a written order continuing the cause to October 31, 2022, for a case management conference and a hearing on Illinois Central's motion for summary judgment.

¶ 15     On November 7, 2022, the trial court issued a written order granting Illinois Central's summary judgment motion.[3] The order noted that the matter had been fully briefed and the court

---

[2] The record also includes the bankruptcy court's dismissal order, dated July 31, 2017.
[3] The record on appeal does not include a report of proceedings for this hearing.

had "the benefit of oral argument on [the parties'] briefs." The court stated that it found two bases upon which to grant summary judgment in favor of Illinois Central.

¶ 16    The court first found that plaintiff lacked standing. Specifically, the court found that, pursuant to *Barnes v. Lolling*, 2017 IL App (3d) 150157, ¶ 16, plaintiff lacked standing to raise this claim because plaintiff failed to disclose this lawsuit to the bankruptcy court while his bankruptcy petition was pending. The court explained that, since the claim was neither disclosed nor scheduled as an asset during the bankruptcy proceedings, the claim remained the property of the estate, divesting plaintiff of standing to pursue the claim on his own behalf.

¶ 17    The court also found that plaintiff was judicially estopped from raising the claim. The court noted that plaintiff "principally" argued that the "fifth prerequisite" of judicial estoppel was not met because plaintiff "did not succeed in the bankruptcy proceedings and his debts were not permanently avoided via discharge." The court, however, rejected that argument, finding that confirmation of the Chapter 13 plan (see 11 U.S.C. § 1301 *et seq.* (2012)) conferred a benefit to plaintiff. The court further found that it was given "no evidence as part of the factual record *** to support that this was some sort of mistake." The court then granted summary judgment in favor of Illinois Central and dismissed it with prejudice. This appeal follows.

¶ 18                                    ANALYSIS

¶ 19    On appeal, plaintiff contends that the trial court erred in granting defendant's motion to dismiss count I and defendant's subsequent motion for summary judgment on count II. With respect to count I, plaintiff argues that the court erroneously found that plaintiff's application for workers' compensation benefits barred his FELA claim against Illinois Central. As to count II, plaintiff argues that the court's application of judicial estoppel was unwarranted.

¶ 20                                    I. Plaintiff's Brief

¶ 21     As a preliminary matter, we must discuss the quality of plaintiff's brief before this court. Plaintiff's statement of facts consists of merely four short paragraphs describing solely the events leading up to the bankruptcy court's dismissal and closure of plaintiff's bankruptcy proceedings *through* August 2017 but nothing thereafter. Plaintiff provides nothing concerning the trial court's dismissal of count I of his complaint nor the court's granting of summary judgment in favor of defendant as to count II, the very events underlying the appeal he brings before us, in violation of Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). Although this court is grateful for concise writing (see, *e.g.*, *Trapp v. City of Burbank Firefighters' Pension Fund*, 2024 IL App (1st) 231311, ¶ 14), plaintiff's statement of facts here is not concise; it is patently inadequate. Rule 341 is not a "license to cherry-pick" (*id.*); rather, it requires a statement of the "facts necessary to an understanding of the case" (Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020)). This appeal concerns matters that took place *after* August 2017. Plaintiff's failure to provide this court with a brief recitation of those pertinent events delays the resolution of this appeal.

¶ 22     Our supreme court rules are not merely suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. "Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal." *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). More specifically, an appellate court has the right to strike an appellant's brief and dismiss the appeal as a result of the appellant's failure to provide a complete statement of facts. See, *e.g.*, *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 845 (2001). We recognize, however, that striking a brief or dismissing an appeal is a particularly harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Although plaintiff's brief hinders our review, it does not completely frustrate it, so we will consider the merits of the appeal.

¶ 23        II. Standards for Motions to Dismiss and Motions for Summary Judgment

¶ 24    Plaintiff challenges the circuit court's granting of defendant's motion to dismiss and motion for summary judgment. Defendant's motion to dismiss was brought under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and "easily proved issues of fact at the outset of a case." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. As a result, a motion to dismiss pursuant to section 2-619 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 25    Section 2-619(a)(9) of the Code permits dismissal if "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2018)), where "affirmative matter" refers to a defense that "negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. In other words, affirmative matter includes "any defense other than a negation of the essential allegations of the plaintiff's cause of action." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). If, however, the affirmative matter is not apparent on the face of the complaint, the motion must be supported by affidavit. *Id.* at 116.

¶ 26    If the affidavits adequately support the asserted defense, the defendant satisfies the initial burden of going forward on the motion, and the burden then shifts to the plaintiff. *Id.* The plaintiff must establish that the defense either is unfounded or requires the resolution of an essential element of material fact, and the plaintiff may establish this by affidavits or other proof. *Id.* "A counteraffidavit is necessary, however, to refute evidentiary facts properly asserted by affidavit

supporting the motion [or] else the facts are deemed admitted." *Id.* Notably, however, "[n]either conclusory allegations nor conclusory affidavits are sufficient to defeat properly submitted facts in a section 2-619 motion." *Eco Brite Linens LLC v. City of Chicago*, 2023 IL App (1st) 210665, ¶ 9. In addition, when a defendant submits an affidavit in support of a motion to dismiss that controverts a well-pleaded fact in the complaint and the plaintiff fails to file a counteraffidavit disputing the facts in the defendant's affidavit, the facts set forth in the affidavit are accepted as true despite any contrary assertions in the plaintiff's complaint. *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146, 155 (1995).

¶ 27     By contrast, summary judgment is appropriate if the pleadings, depositions, admissions, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* To determine whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Id.* at 131-32. It is important to note, however, that unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact. *Id.* at 132.

¶ 28     We review *de novo* the trial court's decision on motions to dismiss brought under section 2-619 as well as motions for summary judgment. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006) (motions to dismiss); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008) (motions for summary judgment). Finally, we review the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial

court relied on those grounds or whether the trial court's reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 29                    III. Count I (Negligence Predicated Upon FELA)

¶ 30    As noted above, plaintiff first contends that the trial court erred in granting defendant's motion to dismiss count I, which alleged negligence based upon FELA. Plaintiff argues that the court erroneously found that plaintiff's application for workers' compensation benefits barred his FELA claim against Illinois Central. In response, Illinois Central argues that the receipt of workers' compensation benefits bars any subsequent FELA claim. Illinois Central also argues that the court properly dismissed count I because plaintiff has made "no effort" to dispute either the court's finding or Illinois Central's evidence that Illinois Central was not plaintiff's employer.

¶ 31                    A. Whether Workers' Compensation Bars a FELA Claim

¶ 32    The question presented here is whether, as the trial court determined, plaintiff's receipt of workers' compensation benefits is a bar to recovery under FELA. In interpreting federal statutes, we look to the interpretation adopted by federal courts. *Cohen v. Salata*, 303 Ill. App. 3d 1060, 1065 (1999) (citing *Elgin, Joliet & Eastern Ry. Co. v. Industrial Comm'n*, 9 Ill. 2d 505, 507 (1956)). As our supreme court explained,

> "While we are *bound* only by the United States Supreme Court, if the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give *considerable weight* to those courts' interpretations of federal law and find them to be highly persuasive." (Emphases in original.) *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 35.

Nonetheless, if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned. *Id.*

¶ 33 In *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324 (1974), the United States Supreme Court found that an employee could be employed by more than one corporation. In that case, the plaintiff (an employee of a wholly owned subsidiary motor carrier) sued a railroad under FELA for injuries sustained from falling off a railroad car. *Id.* at 319-20. The plaintiff admitted that, technically, he was an employee of the trucking company rather than the railroad, but he claimed that his work was "sufficiently under the control of the railroad" to bring him within the coverage of FELA. *Id.* The plaintiff had also received workers' compensation benefits from the trucking company before commencing his FELA claim. *Id.* at 321. The Court nevertheless held that the plaintiff could also be found to be an employee of the railroad for FELA purposes. *Id.* at 323-24. Specifically, the Court explained that, under the common law, there generally are three ways a plaintiff can establish employment with a rail carrier for FELA purposes despite being "nominally" employed elsewhere: (1) as a "borrowed servant" of the railroad at the time of the injury, (2) being deemed to be acting for "two masters" simultaneously, and (3) as a subservant of a company that is in turn a servant of the railroad. *Id.* at 324. Subsequent federal decisions have recognized the holding in *Kelley*. See, *e.g.*, *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188 (8th Cir. 1981); *DeShong v. Seaboard Coast Line R.R. Co.*, 737 F.2d 1520, 1522-23 (11th Cir. 1984); *Smoot v. New York Susquehanna & Western Ry. Corp.*, 707 F. Supp. 629, 632 (N.D.N.Y. 1989); *Nichols v. Pabtex, Inc.*, 151 F. Supp. 2d 772, 787 (E.D. Tex. 2001).

¶ 34 Here, although the trial court found that "Autoport, not Illinois Central, employed [plaintiff]" and ordered paragraph five (alleging Illinois Central employed plaintiff) stricken from the complaint, the trial court further declined to determine whether Illinois Central was plaintiff's dual employer or whether plaintiff was a borrowed employee. The court declined to do so because it found that there was sufficient evidence that plaintiff's receipt of workers' compensation benefits

11

estopped his claim under FELA. That finding, however, was inconsistent with persuasive federal authority. The court's ruling was therefore in error, and we must reverse its decision on this point.

¶ 35    Nonetheless, Illinois Central relies upon a trio of cases in support of its argument that plaintiff's receipt of workers' compensation benefits acts as a bar to a claim pursuant to FELA: *Barrera v. Roscoe, Snyder & Pacific Ry. Co.*, 385 F. Supp. 455 (N.D. Tex. 1973), *Thate v. Texas & Pacific Ry. Co.*, 595 S.W.2d 591, 596 n.1 (Tex. Civ. App. 1980), and *Mason v. John Boos & Co.*, 2011 IL App (5th) 100399. Illinois Central's reliance, however, is misplaced.

¶ 36    At the outset, neither *Thate* nor *Mason* involved whether a dual employer can be subject to a FELA claim following a successful workers' compensation claim. See *Thate*, 595 S.W.2d at 596 n.1 ("Neither party to this action presented the dual employment theory and consequently, we do not consider it."); *Mason*, 2011 IL App (5th) 100399, ¶¶ 3-4 (plaintiff filed a negligence action against defendants after successful workers' compensation claim).

¶ 37    With respect to *Barrera* (which was decided five years before the United States Supreme Court's decision in *Kelley*), the federal trial court in that case found that the plaintiff was estopped from asserting a claim against the railroad under the FELA because he had successfully prosecuted a claim under the Texas Workmen's Compensation Act.

¶ 38    The court in *DeShong*, however, explained that *Barrera* was not binding. The *DeShong* court first noted that the *Barrera* court's ruling was based upon two grounds: (1) insufficient evidence that the railroad's subsidiary (plaintiff's direct employer) was an alter ego of the railroad and (2) estoppel of a FELA claim based upon the successful prior Texas Workmen's Compensation Act claim. *DeShong*, 737 F.2d at 1523. The court also observed that the *Barrera* plaintiff had admitted that he was not an employee of the railroad and did not claim that the defendant's negligence caused his injuries, so his only claim was pursuant to FELA if he could prove that his employer was merely an alter ego of the defendant railroad. *Id.* Therefore, the

*Barrera* court's conclusion on the second ground (*i.e.*, estoppel) was unnecessary and "purely dictum" because its ruling on the alter ego issue was dispositive of the case. *Id.* In addition, the *DeShong* court commented that, although the Fifth Circuit affirmed the *Barrera* result in a memorandum order, it summarily "approved the result" without expressly approving the trial court's opinion or adopting its rationale, and thus *Barrera* "cannot be viewed as binding precedent on the estoppel issue." *Id.* at 1523-24 (citing *Dillenburg v. Kramer*, 469 F.2d 1222 (9th Cir. 1972); *American Fidelity & Casualty Co. v. Indemnity Insurance Co. of North America*, 308 F.2d 697 (6th Cir. 1962)). Therefore, *Barrera*, *Thate*, and *Mason* are unavailing, and Illinois Central's reliance on them is not persuasive.

¶ 39                    B. Whether the Factual Allegations Avoid Dismissal

¶ 40    Finally, Illinois Central also argues that, without regard to whether a successful workers' compensation claim acts as a bar to prosecuting a claim pursuant to FELA, we should affirm the trial court's dismissal of count I because the evidence did not show that plaintiff was (1) a "dual servant" of both Illinois Central and Autoport or (2) a "subservant," *i.e.*, an employee of Autoport, which was in turn a servant of Illinois Central.

¶ 41    Both points concern whether plaintiff sufficiently alleged—for the purposes of surviving a motion to dismiss—that he was either a direct employee or (via Autoport) an indirect employee of Illinois Central. Federal courts construing the relevant provisions of FELA have held that, although the "primary factor" that determines whether a plaintiff is an employee of the defendant is whether "the latter had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured," other relevant factors are whether the defendant (1) selected and engaged the plaintiff to do the work, (2) paid the plaintiff's wages for performing it, (3) had the power to terminate his employment, and (4) furnished the tools with which the work was performed and the place of work. *Tarboro v. Reading Co.*, 396 F.2d 941, 943 (3d Cir. 1968)

(citing *Ward v. Atlantic Coast Line R.R. Co.*, 362 U.S. 396 (1960)). This is largely consistent with Illinois law. See *Gunterberg v. B&M Transportation Co.*, 27 Ill. App. 3d 732, 738 (1975) (noting that the "classic and principal test" is the "right to control the manner and method in which the work is to be carried on, independent of supervision and direction by his employer," and that other secondary factors include the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, materials, and equipment).

¶ 42    Here, plaintiff improperly asserted a factual conclusion in his complaint when he alleged that Illinois Central was his employer without also pleading the ultimate facts he intended to prove at trial. Illinois Central's motion to dismiss contained the affidavits of Lewis (who stated, among other things, that only Autoport had the power to direct, control, and supervise plaintiff's work and to terminate his employment) and Osmond (who stated that Illinois Central did not have the power to control or supervise his work or to terminate him). Plaintiff's response to the motion to dismiss, however, contained plaintiff's counteraffidavit, in which he stated that Illinois Central (via its employee Osmond) did have the power to terminate him and that, at various times, Illinois Central's managers would directly supervise his work. Plaintiff's statement in his counteraffidavit that Illinois Central supervised his work and had the power to terminate him directly conflicts with the affidavits of Lewis and Osmond denying that Illinois Central had that power over plaintiff. Therefore, whether plaintiff was a dual employee (of both Autoport and Illinois Central) or whether Autoport was itself a servant of Illinois Central is a disputed factual issue.

¶ 43    As noted above, the purpose of a section 2-619 motion to dismiss is to dispose of not only issues of law but also "*easily proved* issues of fact." (Emphasis added.) *Zedella*, 165 Ill. 2d at 185. We must construe all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party (here, plaintiff). See *Snyder*, 2011 IL 111052, ¶ 8. As such, we cannot hold that it is easily proved that plaintiff was neither a dual

employee nor the employee of a servant of Illinois Central. On the limited facts at this point in the proceedings, it is not "clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* Therefore, Illinois Central's motion to dismiss pursuant to section 2-619 should have been denied due to the presence of this disputed factual issue.

¶ 44     Nonetheless, Illinois Central argues that dismissal is warranted as a matter of law and relies upon *Schnitzmeyer v. Indiana R. Road Co.*, 1:09-CV-0107-SEB-DML, 2011 WL 338866 (S.D. Ind. Jan. 28, 2011), and *Larson v. CSX Transportation, Inc.*, 359 Ill. App. 3d 830 (2005), in support of its claim. Illinois Central's reliance, however, is misguided.

¶ 45     At the outset, with respect to *Schnitzmeyer*, it is well established that decisions of lower federal courts are not binding on Illinois courts. See *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 175 (2009) (citing *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302 (2001)). More importantly, however, both *Schnitzmeyer* and *Larson* are distinguishable because both of those cases involved a motion for summary judgment and included, *inter alia*, depositions from various parties. See, *e.g.*, *Schnitzmeyer*, 2011 WL 338866, at *3, *5-8; *Larson*, 359 Ill. App. 3d at 834. Here, by contrast, there are only the pleadings and affidavits and no additional evidence in the form of depositions or admissions. *Schnitzmeyer* and *Larson* are therefore unavailing. Accordingly, we must reverse the trial court's dismissal of count I and remand this cause for further proceedings.

¶ 46                                    IV. Count II (Common-Law Negligence)

¶ 47     Plaintiff next contends that the trial court erroneously granted summary judgment in favor of defendant on count II. The trial court granted defendant's motion on two grounds (standing and judicial estoppel), and plaintiff challenges both of those grounds. With respect to standing, plaintiff argues (and defendant agrees) that the court erred in finding that he lacked standing because, although his negligence claim accrued while his bankruptcy case was pending, the

subsequent dismissal of his bankruptcy case revested him with standing. With respect to the second ground, plaintiff argues that the court's application of judicial estoppel was improper because (1) there was no evidence he intended to deceive the bankruptcy court and (2) he received no benefit from his purported failure to disclose. Defendant disputes plaintiff's claim on this point.

¶ 48                                            Standing

¶ 49    The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). The doctrine thus ensures that only parties who have "a sufficient stake in the outcome of the controversy" are presenting the issues to a court. *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 482 (1992). In Illinois, a party's alleged lack of standing is considered an affirmative defense, which the defendant has the burden to plead and prove. *Duniver v. Clark Material Handling Co.*, 2023 IL 128141, ¶ 16.

¶ 50    When an individual seeks Chapter 13 bankruptcy protection (see 11 U.S.C. § 1301 *et seq.*), the debtor's initial petition seeking relief creates a bankruptcy "estate," which comprises all of the debtor's "legal or equitable interests *** in property as of the commencement of the case." *Id.* §§ 301, 541(a)(1). This includes "non-bankruptcy causes of action that arose out of events occurring prior to the filing of the bankruptcy petition." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 342 (4th Cir. 2013). The trustee appointed in a Chapter 13 bankruptcy acts as an advisor and administrator, whereas the debtor remains in possession of the estate. 11 U.S.C. §§ 1302(a), 1303, 1306(b). Consequently, a Chapter 13 debtor may pursue claims " 'in his own name for the estate.' " *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 127 (quoting *Cable v. Ivy Tech State College*, 200 F.3d 467, 474 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013)); see Fed. R. Bankr. P. 6009(b)

(providing that either the trustee or debtor in possession may "commence and prosecute *** an action or proceeding on the estate's behalf").

¶ 51    Here, the trial court granted defendant's summary judgment motion on count II. Specifically, the court found that, pursuant to *Barnes*, 2017 IL App (3d) 150157, ¶ 16, plaintiff lacked standing to raise this claim because plaintiff failed to disclose this lawsuit to the bankruptcy court while his bankruptcy petition was pending. The court explained that, since the claim was neither disclosed nor scheduled as an asset during the bankruptcy proceedings, the claim remained the property of the estate, divesting plaintiff of standing to pursue the claim on his own behalf.

¶ 52    Subsequent to the trial court's decision, however, our supreme court issued its decision in *Duniver*. There, the plaintiff filed a personal injury lawsuit against multiple defendants. *Duniver*, 2023 IL 128141, ¶ 3. The following month, the plaintiff filed for Chapter 13 bankruptcy relief. *Id.* One year thereafter (in February 2020), the trial court granted summary judgment against the plaintiff, finding in part that the plaintiff lacked standing to bring the personal injury claim on his own behalf. *Id.* ¶ 10. The trial court subsequently denied the plaintiff's motion to reconsider, which noted, *inter alia*, that the bankruptcy case was dismissed due to the plaintiff's failure to make payments under the plan. *Id.* ¶ 11.

¶ 53    The supreme court affirmed the appellate court's reversal of the trial court. *Id.* ¶ 1. The supreme court held that the trial court erred in finding that the plaintiff lacked standing because, pursuant to the Bankruptcy Code, dismissal of a bankruptcy case " 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case'—here, [the plaintiff]." *Id.* ¶ 19 (citing 11 U.S.C. § 349(b)(3) (2018)). The court further distinguished the contrary holding of *Barnes*, 2017 IL App (3d) 150157, observing that, in *Barnes*, the plaintiff-debtor received a "discharge of debt" without disclosing an accrued cause of action,

17

unlike the *Duniver* plaintiff (and plaintiff here), whose bankruptcy case was dismissed. *Duniver*, 2023 IL 128141, ¶ 19 (citing *Barnes*, 2017 IL App (3d) 150157, ¶¶ 16-18).

¶ 54　We agree with the parties that the trial court erred in finding that plaintiff lacked standing to maintain his personal injury lawsuit after the dismissal of his bankruptcy petition. Pursuant to *Duniver* (and the Bankruptcy Code), the property of the bankruptcy estate revested in plaintiff upon the dismissal of his petition. See *id.*; 11 U.S.C. § 349(b)(3). Plaintiff therefore had standing to pursue his personal injury claim, and the trial court's first basis for granting defendant's summary judgment motion was erroneous. We now turn to the second basis for granting summary judgment: judicial estoppel.

¶ 55　　　　　　　　　　　　　Judicial Estoppel

¶ 56　Judicial estoppel is an equitable doctrine that a trial court invokes at its discretion. *Duniver*, 2023 IL 128141, ¶ 21 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The purpose of this doctrine is to protect the integrity of the judicial process by prohibiting parties from intentionally changing positions "according to the exigencies of the moment." *Id.*

¶ 57　The five following prerequisites must be satisfied before a trial court may apply the judicial estoppel doctrine: the party to be estopped must have (1) taken two positions (2) that are factually inconsistent (3) in separate judicial proceedings (4) intending for the trier of fact to accept the truth of the facts alleged and (5) received some benefit after having succeeded in the first proceeding. *Id.* ¶ 22. Nonetheless, even if the five prerequisites are established, the party's inconsistent positions must have resulted from an intent to deceive or mislead, rather than inadvertence or mistake. *Id.* ¶ 23. Additionally, judicial estoppel must be proved by clear and convincing evidence. *Id.* Judicial estoppel has been described as an affirmative defense, which the defendant has the burden to properly plead and prove. *Seymour v. Collins*, 2015 IL 118432, ¶ 42 n.4 (citing *Barley v. Fox Chase Cancer Center*, 54 F. Supp. 3d 396, 404 (E.D. Pa. 2014); 18B Charles A.

18

Wright & Arthur R. Miller, Federal Practice and Procedure § 4477 (2d ed. 2014)). Finally, the judicial estoppel doctrine is an extraordinary one that should be applied with caution. *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, ¶ 38 (citing *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 856-57 (1994)).

¶ 58    With respect to the standard of review, ordinarily, where a trial court has exercised its discretion and applied judicial estoppel, we review that application for an abuse of discretion. *Seymour*, 2015 IL 118432, ¶ 48. Where the trial court's exercise of its discretion "results in the termination of the litigation," however, we review that ruling *de novo*. *Id.* ¶ 49. Here, the trial court's application of judicial estoppel resulted in its granting of defendant's motion for summary judgment. Therefore, our standard of review is *de novo*. *Id.*

¶ 59    Plaintiff argues that judicial estoppel was unwarranted because there was no evidence that his failure to disclose his personal injury claim was due to an intent to "deceive or mislead." The trial court's order granting defendant's summary judgment motion stated that it was "given no evidence as part of the factual record *** to support that this was some sort of mistake" on the part of plaintiff. As discussed below, this finding was reversible error because it improperly presumed plaintiff had a malicious intent behind his failure to disclose his claim.

¶ 60    Our supreme court's holding in *Seymour* provides guidance. In *Seymour*, the plaintiffs filed a personal injury lawsuit against the defendant approximately 3 years after they filed for Chapter 13 bankruptcy protection (and nearly 2½ years after their Chapter 13 plan was confirmed). *Id.* ¶¶ 3-4. The plaintiffs failed to disclose their personal injury claim to the bankruptcy court. *Id.* ¶ 8. The trial court granted the defendant's motion for summary judgment on the basis of judicial estoppel, and the appellate court affirmed. *Id.* ¶¶ 16, 20. Our supreme court, however, reversed. *Id.* ¶ 1. The court explained that judicial estoppel, "like all estoppels," must be proved by clear and convincing evidence. (Internal quotation marks omitted.) *Id.* ¶ 39. The court then

held that it did not appear "*from this record* \*\*\* that the [trial] court exercised discretion" in applying judicial estoppel but instead found that the mere failure to disclose the personal injury claim required dismissal. (Emphasis added.) *Id.* ¶ 50. The court explained that, where there is "affirmative, uncontroverted evidence" that debtors did not deliberately change positions "according to the exigencies of the moment," application of the judicial estoppel doctrine is unwarranted. *Id.* ¶ 63. Notably, the court held that, although "prevailing federal authority" indicates that federal courts *presume* a debtor's mere failure to disclose a claim is a deliberate manipulation, that "inference or presumption" is not controlling in Illinois. *Id.* ¶ 62.

¶ 61 Here, the trial court's written decision faulted plaintiff for failing to provide it with evidence of an innocent oversight. Pursuant to *Seymour*, this was improper. See *id.* ¶¶ 42 n.4, 62-63. Defendant argues that plaintiff provided "no affirmative matter" to the trial court and his brief likewise points to no such evidence in the record. Again, however, that impermissibly shifts the burden to plaintiff, contrary to controlling precedent. See *id.* ¶ 42 n.4. As such, we must reverse the court's granting of summary judgment in favor of defendant and remand for further proceedings.

¶ 62 Moreover, construing the pleadings, depositions, admissions, and affidavits strictly against the movant (here, Illinois Central) and liberally in favor of the opponent, as we must (see *Outboard Marine Corp.*, 154 Ill. 2d at 131-32), the trial court erroneously granted summary judgment in favor of Illinois Central. The court here found that, following "oral arguments" on the parties' briefs, the five prerequisites of applying the judicial estoppel doctrine were met. The court's order stated that plaintiff "principally" argued that the fifth prerequisite was not met (*i.e.*, he did not "succeed" and obtain some benefit in the prior proceeding) because his bankruptcy case was

dismissed without a discharge of his debts.[4]  The court found that the mere confirmation of his bankruptcy plan provided a benefit to plaintiff.

¶ 63    The *Seymour* court, however, questioned what "a postpetition, postconfirmation, unliquidated cause of action is worth to debtors' creditors in a chapter 13 bankruptcy," and it observed that the few federal decisions addressing the valuation of a claim "concede that a cause of action is an asset that is not easily valued, insofar as, prior to judgment, a cause of action's value is unliquidated and contingent." *Seymour*, 2015 IL 118432, ¶ 52 n.9 (citing *Wissman v. Pittsburgh National Bank*, 942 F.2d 867, 871 (4th Cir. 1991); *In re Ball*, 201 B.R. 210, 214 (Bankr. N.D. Ill. 1996)).  Here, too, although plaintiff had a duty to disclose the lawsuit, its unliquidated, highly speculative value would have been of little help to a bankruptcy court in formulating plaintiff's bankruptcy plan.  This is especially true where plaintiff filed his lawsuit three years after confirmation of his bankruptcy plan and the Bankruptcy Code provides that chapter 13 bankruptcy plans may not provide for payments exceeding five years.  See 11 U.S.C. § 1322(d)(1).

¶ 64    As noted above, summary judgment is a "drastic measure" and should only be granted when the moving party's (here, Illinois Central's) right to judgment is "clear and free from doubt," and summary judgment must be denied if a reasonable person could draw a divergent inference from the undisputed facts.  *Outboard Marine Corp.*, 154 Ill. 2d at 102.  In addition, judicial estoppel is an "extraordinary" doctrine that should be applied with caution (internal quotation marks omitted) (*Construction Systems, Inc.*, 2015 IL App (1st) 141700, ¶ 38), under which the moving party bears the burden of proving by clear and convincing evidence.  *Seymour*, 2015 IL 118432, ¶¶ 39, 42 n.4.  In the factual and procedural context of this case, Illinois Central was not

---

[4]  We note that plaintiff has conceded in his reply brief that he *did* receive a benefit from the confirmation of his payment plan until the dismissal of his bankruptcy petition.  Nonetheless, as a court of review, we are not bound by a party's concession.  See *Beacham v. Walker*, 231 Ill. 2d 51, 60 (2008).

entitled to summary judgment because its right to judgment was not clear and free from doubt. Consequently, we must reverse the judgment of the trial court and remand this cause for further proceedings.

¶ 65                              CONCLUSION

¶ 66     For the foregoing reasons, we reverse the judgment of the trial court granting defendant's motion to dismiss and motion for summary judgment, and we remand this cause for further proceedings.

¶ 67     Reversed and remanded.

*Colon v. Illinois Central R.R. Co.*, 2024 IL App (1st) 221841

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-L-001676; the Hon. Daniel A. Trevino, Judge, presiding. |
| **Attorneys for Appellant:** | Brian J. Spencer, of Spencer Law Offices, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kevin M. Forde and Joanne R. Driscoll, of Forde & O'Meara LLP, and Colleen Konicek, Charles H. Russell, and Elizabeth O. Bryant, of Fletcher & Sippel LLC, both of Chicago, for appellee. |