**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240576-U

Order filed January 29, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THOMAS GROSSI, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL MOTORS, LLC, AMITA | ) | |
| HEALTH, ADVENTIST GLENOAKS | ) | Appeal No. 3-24-0576 |
| HOSPITAL, DR. NICHOLAS F. | ) | Circuit No. 20-L-921 |
| KETTANEH, and DR. SCOTT M. GUTH, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Adventist Glenoaks Hospital and Dr. Nicholas | ) | |
| F. Kettaneh, | ) | Honorable |
| | ) | David E. Schwartz, |
| Defendants-Appellees.) | ) | Judge, presiding. |
| | ) | |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Anderson concurred with the judgment.

_____

**ORDER**

¶ 1  *Held*: The circuit court properly granted summary judgment on plaintiff's medical malpractice claims based on its finding that plaintiff had presented insufficient evidence to prove the element of proximate causation.

¶ 2    Plaintiff, Thomas Grossi, filed an action in the circuit court of Du Page County that alleged claims of medical malpractice against defendants Adventist Glenoaks Hospital (Adventist) and Dr. Nicholas F. Kettaneh. The court granted summary judgment in favor of Adventist and Kettaneh on the claims after finding that plaintiff had failed to present sufficient expert evidence to show that the alleged negligent conduct of Adventist and Kettaneh was the proximate cause of his injuries. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                  A. Amended Complaint

¶ 5    On April 25, 2024, plaintiff filed a six-count amended complaint against General Motors, LLC (General Motors), Adventist, Kettaneh, and Dr. Scott Guth. The amended complaint alleged, in sum, that, on August 3, 2017, plaintiff sustained "serious painful and permanent injuries" in a vehicular collision. The amended complaint further alleged that, following the collision, plaintiff was admitted to the Adventist emergency room for "diagnosis, care and treatment for pain related to a motor vehicle accident," and that two emergency physicians at Adventist, Kettaneh and Guth, later negligently discharged plaintiff from the hospital without first performing the proper medical evaluations to diagnose and treat his pain. The amended complaint also alleged that this negligent conduct caused him to be "permanently prevented from attending his usual affairs and duties" and to "suffer[***] permanent pain, mental anguish, disfigurement, *** [and] liab[ility] for large sums of *** medical and related expenses ***."

¶ 6    Counts I through III of the amended complaint asserted claims of negligence, strict liability, and breach of warranty against General Motors. Counts IV through VI of the amended complaint asserted claims of medical malpractice against Adventist, Kettaneh, and Guth, respectively. On

January 25, 2023, the amended complaint was dismissed with prejudice as to Guth, and, by April 20, 2023, plaintiff and General Motors reached a settlement in principle.

¶ 7                          B. Evidence Produced During Discovery

¶ 8          During discovery, depositions were taken of plaintiff; plaintiff's expert witness, Dr. Craig Furry; plaintiff's treating radiologist, Dr. Gaston Saint Martin; and plaintiff's treating neurosurgeon, Dr. Matthew Reynolds. The record in this appeal includes the full transcript of plaintiff's deposition, but only part of the transcript of Saint Martin's deposition and no part of the transcripts of Furry's and Reynolds's depositions. The parties recite portions of the purported testimony of Furry, Saint Martin, and Reynolds in their briefs.

¶ 9                          1. *Plaintiff's Deposition Testimony*

¶ 10          Plaintiff testified that, at approximately 9:37 p.m. on August 3, he collided with a parked vehicle while driving home from a friend's house and hit the right side of his forehead on the visor inside the vehicle. Immediately following the collision, plaintiff walked the rest of the way home. During the walk, plaintiff stumbled and repeatedly lost his balance, and, after arriving home, he told his wife that his chest and head hurt. The next morning, plaintiff began experiencing dizziness that thereafter occurred once or twice per week for a year.

¶ 11          Plaintiff first visited the Adventist emergency room on August 5, 2017, two days following the collision. He later returned to the emergency room on August 12 and October 7, 2017. Plaintiff testified that, during each of his visits, he informed the physicians that he had been involved in a collision and that his head and chest hurt. Adventist did not perform a computed tomography (CT) scan of his brain until his visit on October 7.

¶ 12                          2. *Furry's Deposition Testimony*

¶ 13      Furry purportedly testified that he was an internal medicine physician and that, in his expert opinion, Kettaneh had violated the standard of care for emergency physicians by failing to order a CT scan of plaintiff's brain on August 5 and allowing plaintiff's brain bleed to remain undiagnosed until October 7. Furry purportedly further testified that, in his expert opinion, plaintiff had a brain bleed on August 5, but that it would be speculation for him to opine as to what a CT scan ordered on that day would have shown.

¶ 14      3. *Saint Martin's Deposition Testimony*

¶ 15      Saint Martin testified that, based on his review of plaintiff's history and the findings from plaintiff's CT examination, plaintiff had sustained two brain bleeds that were "most logical[ly] and likely" caused by the August 3 collision. Saint Martin purportedly also testified that it was difficult to determine whether plaintiff's brain bleeds could have been diagnosed earlier had Adventist performed a CT scan of his brain on August 5.

¶ 16      4. *Reynolds's Deposition Testimony*

¶ 17      Reynolds purportedly testified that, if plaintiff had a known brain bleed and were his patient, then he would have monitored the bleed and discussed treatment options had the bleed grown larger.

¶ 18      C. Summary Judgment and Notice of Appeal

¶ 19      On April 25, 2024, Adventist and Kettaneh filed a joint motion for summary judgment. In their motion, they argued that they were entitled to summary judgment on plaintiff's claims against them for medical malpractice because plaintiff had not proven the causation element of each claim. Adventist and Kettaneh asserted that plaintiff had failed to present evidence demonstrating both that the results of a CT scan performed on his brain on August 5 would have shown that he had a

diagnosable brain bleed and that he would have undergone less risky or invasive treatment had his brain bleed been diagnosed on that same day.

¶ 20      Following hearing on the matter, the circuit court granted summary judgment in favor of Adventist and Kettaneh. On September 25, 2024, plaintiff filed his notice of appeal.

¶ 21                                            II. ANALYSIS

¶ 22      As an initial matter, Adventist and Kettaneh argue that we should strike plaintiff's appellate brief and dismiss this appeal because the statement of facts in plaintiff's brief fails to comply with the requirements set forth under Illinois Supreme Court Rule (Rule) 341(h)(6) (eff. Oct. 1, 2020). Specifically, Adventist and Kettaneh assert that plaintiff's statement of facts is deficient in that it is argumentative and omits pertinent facts.

¶ 23      Rule 341(h)(6) requires an appellant's statement of facts to contain "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment ***." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Although a reviewing court may dismiss an appeal for failure to comply with Rule 341(h)(6), this is an extreme sanction that is ordinarily reserved for only the most egregious failures to comply with the rules and those that hinder this court's review. *Colon v. Illinois Central Railroad Co.*, 2024 IL App (1st) 221841, ¶ 22.

¶ 24      In this appeal, Adventist and Kettaneh are correct that plaintiff's statement of facts includes argument, fails to recite all necessary facts, and, consequently, fails to meet the requirements under Rule 341(h)(6). Nevertheless, plaintiff's violations of Rule 341(h)(6) are not so egregious that they hinder our review of the issues on appeal. Consequently, despite plaintiff's noncompliance with the rule, we decline to strike his appellate brief and will proceed with considering the merits of his appeal. See *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 21

(refusing to strike the appellate brief for multiple violations of Rule 341(h)(6) because, despite the violations, the brief was still sufficient for appellate review).

¶ 25 In medical malpractice cases, summary judgment is appropriate when no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 239-40 (1985). The court must determine whether there is a genuine issue of material fact from the affidavits, depositions, admissions, exhibits, and pleadings offered by the parties. *Stringer v. Zacheis*, 105 Ill. App. 3d 521, 522 (1982). The movant bears the initial burden of production, which it may meet by establishing that the non-movant lacks sufficient evidence to prove an element of his or her claim. *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688 (2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant satisfies its initial burden of production, the burden shifts to the non-movant to present facts that would entitle him or her to judgment as a matter of law and, in doing so, may not rely solely on his or her pleadings to create an issue of material fact. *Id*. at 689.

¶ 26 Because summary judgment is a drastic means of disposing of litigation, it should only be granted when the right of the moving party is "clear and free from doubt." *Purtill*, 111 Ill. 2d at 240. This court reviews a circuit court's grant of summary judgment *de novo*. *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 39.

¶ 27 Furthermore, to prevail on a claim of medical malpractice, the plaintiff must "prove the following elements [***]: the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care." *Purtill*, 111 Ill. 2d at 241-42. The plaintiff must present expert testimony to establish each element, except "in cases in which treatment by the defendant is so common or the act so grossly negligent, that a layman

6

would be able to make a proper evaluation in light of his own experience and knowledge." *Diggs v. Suburban Medical Center*, 191 Ill. App. 3d 828, 833 (1989).

¶ 28    Although the issue of proximate cause is a question of fact ordinarily resolved by the jury, during summary judgment proceedings, the plaintiff must present affirmative evidence showing that the defendant's negligence was arguably a proximate cause of his or her injuries. *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 292-93 (2008). "Proximate cause must be established by expert testimony to a reasonable degree of medical certainty," and "[t]he causal connection between treatment, or a delay and treatment, and the claimed injury must not be contingent, speculative, or merely possible." *Id.* at 293.

¶ 29    Plaintiff in this case argues that the circuit court erred by requiring him to present expert testimony showing that the results of a CT scan performed on his brain on August 5 would have shown that he had a brain bleed. He asserts that expert testimony was not required to prove this fact because a lay person is competent to "draw the logical inference that the not-ordered August 5, 2017, CT scan would have shown the bleed," and, consequently, the factual dispute as to what the CT scan would have shown should have been submitted to the jury. Additionally, plaintiff asserts that, in expecting him to present expert testimony to prove what the results of the CT scan would have shown, the court was requiring expert testimony on "every disputed fact," which was "overkill." Plaintiff also asserts that, in any event, Furry testified that "a breach of the standard of care *** caused the bleed to continue to grow undetected," which, plaintiff argues, was sufficient evidence to establish proximate causation.

¶ 30    In analyzing plaintiff's arguments, we find *Aguilera v. Sinai Hospital Medical Center*, 293 Ill. App. 3d 967 (1997), *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406 (2000), and *Wiedenbeck*, 385 Ill. App. 3d 289, to be instructive. In *Aguilera*, a patient died of cardiac arrest

7

after he was admitted to a hospital's emergency room, where he then experienced seizures and had a CT scan performed on him. *Aguilera*, 293 Ill. App. 3d at 969. During trial in the subsequent action for survival and wrongful death based on medical malpractice, two expert medical witnesses testified that the emergency room physician at the hospital had deviated from the standard of care by failing to perform a CT scan earlier on the patient. *Id.* at 968, 969. One of the experts further testified, however, that, if an earlier CT scan had been performed, then he would have deferred to a neurosurgeon to decide whether surgical intervention was appropriate. *Id.* at 969. The other expert further testified that the results of an earlier CT scan would have shown a small bleed in the thalamus, but that he would have "consult[ed] and seriously consider[ed], if not defer[red] to, a neurosurgeon's opinion about whether surgical intervention would have been appropriate following an earlier CT scan." *Id.* at 970.

¶ 31    On appeal from judgment notwithstanding the verdict, the *Aguilar* court noted that both experts testified that the decision whether to perform neurosurgery on the patient would not have been made without input from a neurosurgeon, and that "the only two neurosurgeons who testified agreed *** that, even with an earlier CT scan, surgery would not have been appropriate or ordered because the bleed was deep within the brain inside the thalamus." *Id.* at 975. The court found that, consequently, the experts' testimony was insufficient to show that neurosurgery should have occurred absent the negligent conduct. *Id.* The court further found that the plaintiff had "failed to offer evidence to a reasonable degree of medical certainty that the alleged negligent delay in administering a CT scan lessened the effectiveness of the medical treatment given to [the patient]." *Id.*

¶ 32    Subsequently, in *Townsend*, the plaintiff died from septic shock after being admitted to a hospital and initially diagnosed with a urinary tract or kidney infection. *Townsend*, 318 Ill. App.

8

3d at 407-08. The special administrator of the plaintiff's estate brought medical malpractice claims against the hospital and one of its physicians and presented expert testimony that stated that the plaintiff's chances of survival would have increased had there been an earlier diagnosis, as well as treatment in the form of "relief" of the obstruction in her kidney. *Id*. at 408, 414. On appeal following trial, the appellate court found that the plaintiff had presented insufficient evidence to prove proximate causation because no radiologist or urologist testified to the specific treatment that they would have performed that would have constituted relief from the obstruction in the plaintiff's kidney. *Id*. at 414-15.

¶ 33 Last, in *Wiedenbeck*, a patient visited an urgent care facility and reported that she had a severe headache. *Wiedenbeck*, 385 Ill. App. 3d at 290-91. Dr. Howard Searle, the physician at the facility who treated the patient, did not order a CT scan or a neurological consultation and the patient later visited an emergency room where a CT scan was performed and revealed a colloid cyst in the third ventricle of her brain. *Id*. at 290-91. The patient was later transferred to another hospital that scheduled her for surgical removal of the cyst. *Id*. at 291. However, prior to the scheduled surgery, the patient suffered a brain herniation and irreversible brain damage that ultimately led to her death. *Id*. The patient's estate later sued Searle and other defendants for medical malpractice and the circuit court granted summary judgment in favor of Searle. *Id*. at 291-92.

¶ 34 On appeal, the *Wiedenbeck* court reviewed the deposition testimony in the record and noted that a family medicine physician testified that Searle had deviated from the standard of care by failing to order a CT scan and neurological consultation of the patient, but that it would have been "pure speculation" to state when definitive treatment of the cyst would have been undergone, though it would have been "sooner" (Internal quotation omitted.). *Id.* at 296. The court further

noted that a neurology expert testified that Searle was required to perform a CT scan on the patient, but that he did not know whether the scan would have shown hydrocephalus on the same day that it was performed or whether the results of the scan would have warranted intervention prior to the day of the patient's scheduled surgery. *Id*. at 297. Additionally, the court noted that the physician who treated the patient at the hospital at which she was scheduled for surgery testified that he would have treated the patient differently if Searle had told him that a CT scan showed evidence of a possible herniation or colloid cyst, but did not testify as to whether an earlier CT scan would have indicated intracranial pressure or possible herniation. *Id*. at 298. "Relying on *Aguilera* and *Townsend*," the court found that the patient's estate had "failed to offer evidence to a reasonable degree of medical certainty that the alleged negligent delay in administering a CT scan lessened the effectiveness of her medical treatment." *Id*. at 298.

¶ 35    Plaintiff's evidentiary showing on the issue of proximate causation in this case falls further short of those made in *Aguilera*, *Townsend*, and *Wiedenbeck*. Although plaintiff asserts that Furry testified that "a breach of the standard of care *** caused the bleed to continue to grow undetected," he has failed to provide this court with a copy of Furry's deposition transcript, or of Reynolds's deposition transcript, for that matter. Plaintiff has also provided only part of Saint Martin's deposition transcript.

¶ 36    In accordance with Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021), it is the duty of an appellant to provide, on appeal, a sufficiently complete record of the lower court's proceedings, which includes the entire common law record and every document filed in the case. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003). Accordingly, "[w]here resolution of the issues depends on the facts adduced at trial, statements in the appellant's brief as to evidence received cannot serve as a substitute for the report of proceedings [citation], and any doubts arising

10

from the inadequacy of the record will [typically] be resolved against the appellant ***." *Murphy v. Chestnut Mountain Lodge, Inc.*, 124 Ill. App. 3d 508, 510 (1984) (internal citation omitted). Nevertheless, courts will accept and consider portions of deposition testimony that are quoted in parties' appellate briefs when no party objects to the procedure and the testimony summaries provided by the parties do not contradict one another. See, *e.g.*, *Hotze v. Daleiden*, 229 Ill. App. 3d 301, 305 (1992).

¶ 37    Here, even if we were to overlook plaintiff's failure to provide all full deposition transcripts on appeal, his arguments before us would still fail for two reasons. First, based on a review of the portion of Saint Martin's deposition transcript that the plaintiff does provide and the expert testimony that the parties recite in their briefs, none of the experts offered by plaintiff ever testified that, had a CT scan been performed on his brain on August 5, then the results would have shown that he had a brain bleed and the outcome of his treatment would have changed. Second, Adventist and Kettaneh assert, and plaintiff does not deny, that, in his deposition, Furry testified that it would have been "speculation" for him to say what the results of a CT scan performed on plaintiff's brain on August 5 would have shown. Thus, plaintiff failed to present sufficient expert testimony to prove proximate causation and the entry of summary judgment in favor of Adventist and Kettaneh was proper.

¶ 38                               III. CONCLUSION

¶ 39    The judgment of the circuit court of Du Page County is affirmed.

¶ 40    Affirmed.

11