2023 IL 128141

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128141)

DARRIUS DUNIVER, Appellee, v. CLARK MATERIAL HANDLING COMPANY *et al.*, Appellants.

*Opinion filed January 20, 2023.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, and Cunningham concurred in the judgment and opinion.

Justices Rochford and O'Brien took no part in the decision.

## OPINION

¶ 1 Plaintiff, forklift operator Darrius Duniver, lost his leg during a July 2017 workplace accident. On January 16, 2019, Duniver filed a personal injury lawsuit seeking recovery for the workplace accident from multiple defendants. He later added Neovia Logistics Services, Inc. (Neovia), as a defendant. On February 8,

2019, Duniver filed for Chapter 13 bankruptcy protection. See 11 U.S.C. § 1301 *et seq.* (2018). In his bankruptcy filings, Duniver failed to disclose the personal injury lawsuit and answered "no" when asked whether he was suing anyone. Defendants sought summary judgment against Duniver, arguing judicial estoppel prohibited Duniver from pursuing his personal injury lawsuit and also arguing that Duniver lacked standing to sue them where the injury claim belonged to the bankruptcy estate. Duniver filed amended bankruptcy schedules disclosing his personal injury case after receiving the summary judgment motion. Eventually, the bankruptcy case was dismissed. The circuit court granted defendants' motion for summary judgment, finding Duniver "blatantly deceived" the bankruptcy trustee and that any claim would have to be pursued on behalf of the bankruptcy estate. The appellate court reversed, holding Duniver had standing and judicial estoppel did not apply where Duniver "received no benefit" from failing to disclose the personal injury case in the bankruptcy proceeding and that the evidence presented failed to show an intent to deceive or mislead. We affirm.

¶ 2                                              BACKGROUND

¶ 3        Duniver was seriously injured in a workplace forklift accident on July 30, 2017, resulting in the loss of his left leg. He filed a workers' compensation claim, and on January 16, 2019, he filed the personal injury lawsuit at issue here in the circuit court of Cook County against Clark Material Handling Company; Battery Handling Systems, Inc.; and Equipment Depot of Illinois, Inc., while later adding Neovia as a defendant. On February 8, 2019, Duniver filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois.

¶ 4        In Duniver's bankruptcy petition, he checked "[n]o" in response to a question asking if he had "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," where the question noted possible examples included "Accidents, employment disputes, insurance claims, or rights to sue." He then checked "[y]es" in response to a question asking if he had "Other contingent or unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." Duniver listed the following:

           "Darrius Duniver

> Workman's Comp
>
> Desparti Law Goup [*sic*]
>
> Rommiumicci & Blanch [*sic*]
>
> v[.]"

Notably, the law firm representing Duniver before the circuit court in this case was "Romanucci & Blandin, LLC."

¶ 5        On another form, he checked "[y]es" in response to a question asking "[w]ithin 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding," where the question explained to "[l]ist all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes." A collections action filed against Duniver was listed, but the personal injury case was not included.

¶ 6        Duniver signed the bankruptcy petition multiple times, swearing under penalty of perjury that the above answers were correct. And when asked under oath by the trustee, "[a]re you suing anyone," Duniver answered "[n]o." He also answered "[n]o" when asked whether there was "[a]nyone suing you." A proposed amended bankruptcy plan was confirmed by the bankruptcy court on July 24, 2019.

¶ 7        Neovia filed a motion for summary judgment, which the other defendants joined. The motion argued Duniver should be estopped from pressing this lawsuit because he had failed to disclose it in his sworn bankruptcy petition and all elements of judicial estoppel were satisfied. The motion also argued Duniver lacked standing to bring the lawsuit because the injury claim belonged to the bankruptcy estate.

¶ 8        Duniver filed a response, stating in an attached affidavit that he had relied on his bankruptcy counsel to tell him what information needed to be included in his petition. Duniver asserted his attorney asked him about any debts, collection matters, and income but had not told him of a duty to disclose pending lawsuits or injury claims and that, had his attorney asked him about pending lawsuits, he would have told the attorney about the injury lawsuit. Duniver stated he had not intended

to deceive anyone and directed his attorney to correct the plan once he learned the injury claim should have been included in the bankruptcy case.

¶ 9        Duniver argued that his failure to disclose this case during the bankruptcy proceedings was an inadvertent mistake but did not challenge defendants' analysis on the prerequisites of judicial estoppel. Duniver also argued he still maintained standing in this case because the complaint could be amended to substitute the correct plaintiff. Neovia filed a reply in which it noted ignorance of the law is not a defense and argued that reliance on legal advice "does not relieve a debtor of his or her obligation for candor to the bankruptcy court." Neovia also reasserted its argument on standing and argued no late disclosure of the case in bankruptcy filings should moot its summary judgment motion.

¶ 10       The circuit court issued an order granting summary judgment against Duniver on February 24, 2020. Highlighting Duniver's negative response to the question of whether he was suing anyone, the court determined Duniver "blatantly deceived" the bankruptcy trustee and held that judicial estoppel applied. The court noted on the issue of standing that, although Duniver "technically does have standing to pursue the claim, it must be done *on behalf of the estate*" and, although "this could be corrected," it "would be futile in light of" the court's ruling for summary judgment on judicial estoppel. (Emphasis in original.)

¶ 11       Duniver filed a motion for reconsideration on March 24, 2020, in which he informed the circuit court that (1) he had filed amended schedules in the bankruptcy proceedings disclosing the personal injury case on January 22, 2020, and (2) the bankruptcy case was nonetheless dismissed on February 19, 2020, due to Duniver's failure to make payments under the plan. Duniver argued for the first time against one of the prerequisites of judicial estoppel, asserting his bankruptcy case did not provide a benefit where it was dismissed without a discharge of debt. On June 19, 2020, the court issued an order denying the motion for reconsideration.

¶ 12       The appellate court reversed. 2021 IL App (1st) 200818. The First District determined the dismissal of the bankruptcy case "in effect" revested Duniver with standing in this case. *Id.* ¶ 15. It elected to overlook forfeiture on Duniver's argument that he had received no benefit from taking contrary positions because it was "necessary to obtain a just result." *Id.* ¶ 18. The court then held judicial estoppel did not apply where it determined Duniver "received no benefit" from

- 4 -

failing to disclose this case in bankruptcy proceedings (*id.* ¶ 20) and "the evidence presented fails to show an intent to deceive or mislead" (*id.* ¶ 24). This court allowed defendants' joint petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 13                                                ANALYSIS

¶ 14         On appeal, defendants argue (1) Duniver does not have standing to bring this lawsuit and (2) the circuit court did not abuse its discretion in applying judicial estoppel. We address those arguments in turn.

¶ 15                                             I. Standing

¶ 16         In Illinois, a lack of standing is an affirmative defense that defendants have the burden to plead and prove. *Chicago Teachers Union, Local 1 v. Board of Education of Chicago*, 189 Ill. 2d 200, 206 (2000). "The doctrine of standing is intended to assure that issues are raised only by those parties with a real interest in the outcome of the controversy." *Id.*

¶ 17         Defendants assert a debtor in bankruptcy is required to file schedules of all assets and liabilities (11 U.S.C. § 521(a)(1)(B)(i) (2018)) and any unscheduled property is not automatically abandoned when a bankruptcy case is dismissed. Because Duniver did not disclose the injury lawsuit in his initial bankruptcy filings, defendants assert that any right to bring the case resides solely with the bankruptcy trustee, not Duniver. Duniver notes defendants ignore the circuit court's recognition that any "deficiency in the plaintiff's status could be corrected by simply amending the complaint." He also asserts, in line with the appellate court's holding, that upon dismissal of the bankruptcy case, "no matter the reason, the claim had to revest in Duniver; it did not move to some kind of legal purgatory."

¶ 18         We conclude Duniver, who filed for Chapter 13 bankruptcy, has standing. As the circuit court noted, to the extent Duniver should have brought the action on behalf of the estate, this could be corrected by amendment. "Misnomers most commonly occur when defendants are misnamed, but plaintiffs also sometimes

misname themselves," and such an error "may be corrected anytime." *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 46. The Eleventh Circuit has explained:

> "[A] Chapter 13 debtor retains standing to continue to pursue [a] civil claim. See 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009 ('With or without court approval, the … debtor in possession may prosecute … any pending action or proceeding by … the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.'). Thus, a Chapter 13 debtor may continue to control the lawsuit and the terms of any settlement." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017).

¶ 19 Furthermore, we note Duniver did file amended schedules disclosing this case prior to his bankruptcy action being dismissed. "[T]he Bankruptcy Code and Rules liberally permit debtors to amend their disclosures when an omission is discovered" " 'as a matter of course at any time before the case is closed.' " *Id.* (quoting Fed. R. Bankr. P. 1009(a)). And the Bankruptcy Code provides that "dismissal of a case *** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case"—here, Duniver. 11 U.S.C. § 349(b)(3) (2018); see *Holland v. Schwan*'s *Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 126 (concluding that, "after the bankruptcy court dismissed [the debtor]'s chapter 13 bankruptcy petition, [he] had standing to pursue his claim"). By contrast, the debtor in *Barnes v. Lolling*, 2017 IL App (3d) 150157, ¶¶ 16-18, received a discharge of debt without disclosing an accrued cause of action, and the court concluded the debtor had no standing to then pursue the claim. We therefore reject defendants' contention that Duniver lacks standing here and turn to the substantive issue presented.

¶ 20                                          II. Judicial Estoppel

¶ 21 Judicial estoppel is an equitable doctrine that may be invoked by a court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It serves to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Seymour v. Collins*, 2015 IL 118432, ¶ 36; *id.* ¶ 33 (noting the application of judicial estoppel addresses "the problem of a party acting in bad faith, playing fast and loose with the court" (internal quotation marks omitted)).

¶ 22    Five prerequisites must be satisfied before a court may invoke the doctrine of judicial estoppel, including that (1) the party to be estopped has taken two positions (2) that are factually inconsistent (3) in separate judicial proceedings (4) intending for the trier of fact to accept the truth of the facts alleged and (5) the party has succeeded in the first proceeding and received some benefit from it. *Id.* ¶ 37 (citing *People v. Runge*, 234 Ill. 2d 68, 132 (2009), *People v. Jones*, 223 Ill. 2d 569, 598 (2006), and *People v. Caballero*, 206 Ill. 2d 65, 80 (2002)).

¶ 23    However, even where the above prerequisites are found, the party's inconsistent positions must have resulted from an "intent to deceive or mislead," rather than "inadvertence or mistake." *Id.* ¶ 47 (citing *Jaeger v. Clear Wing Productions, Inc.*, 465 F. Supp. 2d 879, 882 (S.D. Ill. 2006)). Furthermore, "judicial estoppel, like all estoppels, must be proved by clear and convincing evidence." (Internal quotation marks omitted.) *Id.* ¶ 39.

¶ 24    Finally, before analyzing whether judicial estoppel applies in this case, we must first determine what standard of review to apply. In *Seymour*, when called upon to review the application of judicial estoppel within the context of a ruling on a motion for summary judgment, we discussed the pertinent standards of review. *Id.* ¶¶ 36-49. We contrasted the abuse-of-discretion standard that applies to a circuit court's application of judicial estoppel with the *de novo* standard that applies in an appeal from the grant of a motion for summary judgment. *Id.* ¶ 43. After examining the two standards, this court concluded as follows:

    "With respect to the applicable standard of review, we believe it logically follows that we review a trial court's exercise of discretion for abuse of discretion. That standard also appears to be consistent with the approach commonly taken by other courts where an exercise of discretion is concerned. [Citation.] Therefore, where a trial court has exercised its discretion in the application of judicial estoppel, we review for abuse of discretion." *Id.* ¶ 48.

Yet, this court went on to explain:

    "However, where the exercise of that discretion results in the termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, it follows, as well, that we review that

ruling *de novo*. As the authorities previously cited indicate, the necessary representations in a successful motion for summary judgment are that: there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law [citation], as reasonable persons could not draw divergent inferences from the undisputed facts [citation], and the movant's right to judgment is clear and free from doubt [citation]. The record must be strictly construed against the movant and liberally in favor of the nonmoving party. [Citation.] There can be no room for reasonable persons to differ on the weight to be given the relevant factors of a legal standard." (Internal quotation marks omitted.) *Id.* ¶ 49.

We review this case in line with that guidance.

¶ 25                          A. Whether the Circuit Court Erred in Granting Summary
                              Judgment for the Defense on the Basis of Judicial Estoppel

¶ 26        Defendants argue the appellate court erred in reversing the circuit court where the First District concluded "the evidence presented fails to show an intent to deceive or mislead" and therefore "judicial estoppel is not warranted." 2021 IL App (1st) 200818, ¶ 24. Citing *Seymour* and relying on the application of the abuse-of-discretion standard, defendants assert the "circuit court had ample evidence of Duniver's intent to mislead the bankruptcy court and acted well within its discretion in invoking the doctrine of judicial estoppel to bar Duniver's personal injury lawsuit." For this reason, defendants contend the "appellate court usurped the circuit court's responsibility to *** exercise its discretion in deciding whether to apply the doctrine of judicial estoppel."

¶ 27        Duniver argues the appellate court correctly reversed the circuit court because summary judgment was inappropriate here. He notes he did disclose his workers' compensation claim on his petition, which arose out of the same workplace-accident incident as the personal injury case. Duniver believes "[t]hat alone suggests confusion rather than deceit." Duniver also asserts his negative response, when asked at the creditors' meeting whether he was *suing anyone*, suggests confusion and "should have immediately been recognized as incorrect by the trustee" or his attorney, where—putting aside the injury case for a moment—both knew about the workers' compensation case. Duniver asserts this suggestion of

confusion, rather than deceit, is only strengthened by the negative response he incorrectly gave to the question of whether he was *being sued*, where he had already disclosed a collections suit against him. Duniver explains he "is not arguing his denial [of the personal injury lawsuit] could not be construed as evidence of intentionally failing to disclose, but only that when taken in context, there is at least a question of fact about his intent" that should be sufficient to defeat a motion for summary judgment at this stage.

¶ 28 Given the specific facts at issue here, we conclude the circuit court erred in granting the defense motion for summary judgment because reasonable people could draw divergent inferences on whether Duniver's omissions and misstatements in the bankruptcy proceedings reveal inadvertence or an intent to deceive. We emphasize our prior language from *Seymour* that, where a circuit court's exercise of "discretion results in the termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, *** we review that ruling *de novo*." *Seymour*, 2015 IL 118432, ¶ 49. That is the case here. We therefore reject defendants' reliance on the abuse-of-discretion standard as inapplicable under these circumstances.

¶ 29 On *de novo* review, while strictly construing the record against defendants and liberally in favor of the nonmoving party, Duniver, we conclude that reasonable persons could draw divergent inferences from the undisputed facts and that the defendants' right to judgment is therefore not clear and free from doubt. See *id.* Duniver disclosed his workers' compensation claim but not the personal injury action, though both arose from the same incident, and said he was not suing anyone despite the existence of both actions. And he also said no one was suing him despite the existence of a collections case against him that he had already disclosed. Even while listing his workers' compensation claim in his initial bankruptcy filings, Duniver included the (misspelled) name of the law firm representing him before the circuit court in this personal injury action ("Rommiumicci & Blanch [*sic*] v"), along with the name of another law firm. While it is not the only inference that could be drawn, we agree that reasonable people could conclude from these facts that Duniver's actions in bankruptcy proceedings resulted from confusion and inadvertence, not an intent to deceive.

¶ 30    Defendants rely heavily on *Smith v. Integrated Management Services, LLC*, 2019 IL App (3d) 180576, yet the facts at issue there painted a much clearer picture of an intent to deceive. The *Smith* plaintiff brought a lawsuit in Illinois, then filed for bankruptcy in another state—Arizona—without disclosing the lawsuit. *Id.* ¶¶ 4-5. Then, when testifying under oath in a lawsuit deposition just five days after being deposed in the bankruptcy action, the plaintiff denied having filed for bankruptcy. *Id.* ¶¶ 6-7. He went on to demand a $1.2 million settlement in the lawsuit, despite amending his bankruptcy filings and still omitting the lawsuit. *Id.* ¶¶ 7-8. While noting the plaintiff's choice to file his claims in courts located in different states, the Third District highlighted his "conflicting testimony in both actions, taken just five days apart," and effort to settle the lawsuit while still denying its existence in bankruptcy, concluding that no "reasonable person would find these misrepresentations innocent." *Id.* ¶ 26. In contrast, as we have discussed, the facts at issue here reasonably support diverging inferences on inadvertence.

¶ 31    Defendants also cite an appellate court decision for the proposition that the combination of "a debtor's knowledge of his personal injury claim," together with "a motive for concealment" and an "affirmative obligation to disclose," presents sufficient evidence "to infer the debtor 'has played fast and loose with the courts.' " See *Dailey v. Smith*, 292 Ill. App. 3d 22, 29 (1997). *Dailey* in turn relied on a federal case, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996), in support of making that inference. *Dailey*, 292 Ill. App. 3d at 29. Yet *Dailey* predates this court's explicit rejection of any such presumption in *Seymour* and therefore is no longer good law. See *Seymour*, 2015 IL 118432, ¶ 63 ("We are not so ready, as the federal courts appear to be, to penalize, via presumption, the truly inadvertent omissions of good-faith debtors in order to protect the dubious, practical interests of bankruptcy creditors."); see also *Slater*, 871 F.3d at 1186, 1188-89 (rejecting a prior rule presuming intent to deceive, and instead adopting the "better approach" of the Sixth, Seventh, and Ninth Circuits, in which courts must "consider all the facts and circumstances of the case," including any proceedings that occurred in the bankruptcy court after the omission was discovered, "to determine whether the debtor had the requisite intent"). When we consider all of the facts and circumstances of this case, there is ample room to conclude Duniver was indeed confused and intended no deceit.

¶ 32      For these reasons, we therefore affirm the judgment of the appellate court.

¶ 33                       B. Whether Duniver Received a Benefit

¶ 34      The parties also dispute one of the prerequisites for applying judicial estoppel—whether Duniver received a benefit from his prior inconsistent statement and succeeded in the initial proceeding. Defendants assert the appellate court mischaracterized the standard by holding that Duniver "did not receive a *significant* benefit" from his failure to disclose the injury case in his bankruptcy proceedings because his debts were not discharged. (Emphasis added.) 2021 IL App (1st) 200818, ¶ 26. We decline to reach this issue, as it is unnecessary to decide the case.

¶ 35      However, we reaffirm the "some benefit" standard from *Seymour*, 2015 IL 118432, ¶ 53 (explaining the party to be estopped must "have succeeded in the first proceeding and received some benefit from it").

¶ 36                                CONCLUSION

¶ 37      For the foregoing reasons, we affirm the appellate court's judgment, which reversed the circuit court's order granting summary judgment for defendants.

¶ 38      Appellate court judgment affirmed.

¶ 39      Circuit court judgment reversed.

¶ 40      Cause remanded.

¶ 41      JUSTICES ROCHFORD and O'BRIEN took no part in the consideration or decision of this case.