2026 IL App (1st) 241267-U

SECOND DIVISION
February 3, 2026

No. 1-24-1267

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23CR6740 |
| | ) | |
| JOHNELL STALLWORTH, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The admission of defendant's statement captured on police officer's body-worn camera was not barred by "judicial estoppel," and defense counsel was not ineffective for failing to introduce inadmissible impeachment evidence.

¶ 2    Following a bench trial, defendant, Johnell Stallworth, was convicted of aggravated battery of a peace officer, and sentenced to three years' imprisonment. In this appeal, defendant argues that the trial court erred in allowing the State to introduce a statement he made prior to the offense, and that his trial counsel was ineffective for failing to use "police misconduct records" to impeach the testifying officers. For the foregoing reasons, we affirm the trial court's judgment.

¶ 3    The record indicates that defendant was charged with aggravated battery to a peace officer, based on allegations that on May 16, 2023, defendant spit on Officer Juan Perez, when defendant was under arrest for an offense unrelated to this appeal.

¶ 4    During the pretrial proceedings, it became clear that defendant and his attorney, an Assistant Public Defender (APD), had a disagreement regarding defendant's desire to file a motion to "dismiss the indictment due to an illegal arrest." On January 12, 2024, defendant informed that court that he did not want the APD to represent him, and that he was requesting to represent himself *pro se*. Defendant told the court that he believed that the APD was "not working in [his] best interest," because she would not file a motion based on his "illegal arrest." The APD explained to the court that she had considered defendant's proposed motion but that such a motion would not "apply" to his case. The trial court admonished defendant regarding his request to represent himself *pro se*, and defendant confirmed that he wanted to represent himself.

¶ 5    At the next court date, on January 19, 2024, defendant informed the court that he no longer wanted to represent himself. The court asked defendant if he wanted the court to reappoint the Public Defender, and defendant responded:

> DEFENDANT: Yes. I have a question for you, sir.
>
> COURT: What's the question?
>
> DEFENDANT: I was illegally obtained, and like they -- they charged me. Like, I was never supposed to be in police custody to begin with.

¶ 6    The court admonished defendant that it could not give him "legal advice" and that he should discuss his question with his lawyer. The court then asked the newly reappointed APD whether counsel had "looked into" the issue to determine whether a "colorable motion exists." The

APD responded that she had considered the issue, discussed it with other colleagues, and explained to defendant that the motion did not apply to his case.

¶ 7    Defendant then responded, "There was another motion too that I was trying to -- I was never read my *Miranda* rights, which [the APD] never brought up, and I gave a statement." The APD explained, "Judge, there is no statement that's being – there's no confession or admission to anything in this case." The court then inquired of the Assistant State's Attorney (ASA):

> COURT: Well, is there any statement that the State is intending to use against Mr. Stallworth?
>
> ASA: No, Judge.
>
> COURT: There is no statement that they intend to use against you. *** There's nothing to suppress. They just said, the gentleman standing right here is the prosecutor, that they're not intending to use anything that you said against them, so there's nothing to suppress.
>
> DEFENDANT: I was never read my *Miranda* rights, I heard --
>
> ***
>
> COURT: Even if that's true, they're not using anything that you said against you, so there's nothing to suppress.
>
> DEFENDANT: They're using a video. That's enough.
>
> COURT: A video of what?
>
> APD: There's a video at the station --
>
> DEFENDANT: Of a statement. Of a statement.
>
> COURT: No. No. Mr. Stallworth, I just asked and I'll ask again. Does the State intend to use a statement of Mr. Stallworth as evidence against him?

DEFENDANT: It self-incriminates.

ASA: No, Judge. It's an aggravated battery to a police officer. There was no statement. It's the incident itself, and we're relying upon the officer's testimony.

¶ 8    Thereafter, the trial court held a bench trial on April 5, 2024. Prior to trial the APD stated that there was a "preliminary matter" that she wanted to bring to the court's attention.

APD: Before we started these proceedings, during the break the State did share or show clips of video that they intend to enter into evidence. On a prior court date, the State represented on the record that they would not be using any statements that would have been made by Mr. Stallworth in their case. Based off of that representation certain motions were not filed. Judge, the *** clips the State did share do include audio *** includ[ing] a statement made by Mr. Stallworth. So we are asking that that audio not be allowed to be played.

COURT: So, State, did you previously tell the defense that you were not going to be using his statements?

ASA: Your Honor, my partner did represent that he would not be using the statement. *** On further looking at the case, we are intending to use a statement that is not a custodial interrogation. It is an excited utterance. We are happy to, if need be –

COURT: Well, I'm going to stop you right there. If it's not something that would have been subject to a motion to suppress, right, so it is something that is otherwise admissible, right, the request you're making is what specifically?

APD: Judge, our position is that it was a statement made prior to any *Miranda* reading. The State is correct it is not *** in response to any questioning from

4

officers but it is a statement that was made before any *Miranda* warning would be read. Due to the nature of this case --

COURT: Well, so let me backtrack here just so it is clear. The State told the defense they wouldn't be using his statements and the defense, it seems, has relied upon that --

APD: Correct.

COURT: -- in preparing for trial. Now you're saying today that you are going to use the statement. Is that --

ASA: Yes, your Honor.

COURT: -- a fair summary here? Well, as an offer of proof can you tell me what that statement allegedly is.

ASA: Your Honor, \*\*\* as part of the officers moving the defendant from one place to another, the defendant is yelling at the officers. The officers are not asking him any questions. The defendant indicates that he is going to commit the crime that he is alleged to commit right before then committing it.

COURT: Okay. But you all said you weren't going to use the statement.

ASA: We -- My partner took that to mean custodial statements. He did not take that to mean the beforehand statement, your Honor.

APD: For the record, Judge, he was in custody at the time. He was in the police station in handcuffs. It is not a statement that is elicited from any interrogation, but it is a custodial statement.

COURT: Well, sure. But if it's a custodial statement that doesn't mean it violates the Fifth Amendment. What we could do is this. It's a bench trial. I would also

5

entertain any -- if you're making a Fifth Amendment issue, I'll address that issue in the middle of the bench trial. I'll say it's a little problematic that it seems it was unclear what the State was saying about the statements. I get that the defense was relying on what the State's promising. That just needs to be clarified before trial. So what we'll do is this. I'll hear the statement but what I'll also entertain is if there's any basis to suppress that statement, I'll entertain that in the middle of the motion.

APD: Sure. Thank you, Judge.

¶ 9   At trial, Officer Perez testified that on May 16, 2023, at about 11:45 p.m., he and his partners, Officers Roman and Espinosa, were working at the Jackson Red Line stop. He was in plainclothes, but he had on a "ballistic vest as well as a duty belt." His vest had his name, unit designator, and police star on the front, and the word "police" in large white letters on the back. Defendant, whom Officer Perez identified in open court, was at the stop and was arrested.

¶ 10   After defendant was arrested, officers took him to the police station and placed him in the processing area. Defendant was "irate, aggressive, [and] physically uncooperative" as Officer Perez conducted a custodial search of him. Officer Perez tried to handcuff defendant to a wall, but defendant would not "stand up from the chair that he was sitting on so [officers] had to move him to a different area to handcuff him to a bench." After handcuffing defendant to the bench, Officer Perez began walking away. At that point, he "heard a spitting noise" and "felt water or mist hitting the side of [his] face on the left side." Defendant was the only person in the location from where the spitting noise came. Officer Perez had a body-worn camera at the time of the incident, which captured the spitting noise.

¶ 11    The State sought leave to admit Officer Perez's body-worn camera footage. The court asked the defense if it had any objection, and the APD responded that it did not, other than its "pretrial objection." The video was "conditionally admitted subject to cross-examination and further argument." After the video was published to the court, Officer Perez testified that he heard statements made by defendant during the clip, and that after defendant's statements, the officer heard a "spitting noise." Officer Perez confirmed that the spitting noise was the same noise that he had previously described.

¶ 12    This court has reviewed the video footage published to the court, which shows officers leading defendant and handcuffing him to a bench. Defendant is speaking to the officers as they handcuff him and as they later begin to move away. Although defendant's statements are somewhat difficult to decipher, the parties agree that the defendant stated, "B*** a*** n****, I should spit in your face. I will spit in your face." After defendant's statement, the body-worn camera is facing away from defendant, and a spitting noise can be heard.

¶ 13    On cross-examination, the officer testified that at the time defendant had made his statements, he had not been given *Miranda* warnings. Officer Perez also agreed that he did not see defendant spitting, and that the video did not show defendant "actually spitting on" the officer.

¶ 14    Officer Abraham Espinosa testified that he was also working on the Jackson Red Line stop on May 16, 2023, when defendant was arrested and taken to the police station. Officer Espinosa testified that defendant was "[v]ery confrontational" as he was being processed. Defendant refused to comply with the officers' verbal directions, so they moved him to a bench where the officers to secure defendant more easily. After defendant was secured to the bench, Officer Espinosa walked away, and then heard a "spit sound." Officer Espinosa turned around and saw Officer Perez "wipe at his face with his arm."

¶ 15    Officer Espinosa was wearing a body-worn camera at the time of the offense. The State admitted the video from Officer Espinosa's body-worn camera without objection. After the video was published, Officer Espinosa described the video as showing "when we sat him at the bench, when we secured him on the bench, and when the defendant spat at my partner." Officer Espinosa explained that the "spit sound" triggered Officer Espinosa to turn around, and when he did, "that's when I saw my partner wiping his face with his arm."

¶ 16    On cross-examination, the officer acknowledged that his back was to defendant at the time he heard the spit sound, and so he did not "actually see [defendant] spit on anyone." Officer Espinosa also agreed that the video showed that the other officers in the video did not have a "verbal response" to the spitting sound. Officer Espinosa saw his partner wiping his cheek, but he did not see any spit on his partner's cheek. Officer Espinosa was aware that "spit masks exist[ ]," but he did not use one on defendant after the incident.

¶ 17    On redirect, Officer Espinosa testified that he had never used a spit mask before, and he had never seen one at the police station.

¶ 18    After the State rested, the defense argued that the court should not consider the statement made by defendant which was captured on the body-worn camera footage, because defendant was in custody at the time it was made, and he had not been given *Miranda* warnings. The State responded that the audio of defendant's statement should be admitted because it was not made in response to any questioning or interrogation. The State argued that the statements were "excited utterances that defendant was yelling."

¶ 19    In ruling, the court agreed that defendant had not been given *Miranda* warnings at the time he made the statement, but from the court's observations of the video, "this was not a custodial

interrogation. It was a statement that was made by the defendant." The court expressed that it was not sure whether defendant's statement would constitute an excited utterance, but:

> "[b]ased on what I've seen and heard so far I can't say that it's a custodial interrogation or it was a response to a question. It seemed to be voluntary to me. The fact that there was no *Miranda*, which I don't understand why they wouldn't have just given him *Miranda* rights when they arrested him at the Red Line stop, but that fact alone that he hadn't been Mirandized isn't a basis to suppress his voluntary outburst which was not the product of any questioning. So, the request to bar that on Fifth Amendment grounds is respectfully denied."

¶ 20    The defense then moved for a directed finding, which the court denied.

¶ 21    Defendant exercised his right to testify in his own defense, after being admonished by the court.

¶ 22    Defendant testified that on May 16, 2023, at about 11:30 p.m., he was at the Chicago Police Department and officers were attempting to place him in handcuffs. Defendant testified that he never spit on Officer Perez, explaining that he "spit in front of [himself] but not on Officer Perez." He acknowledged that there was a spitting sound that could be heard on the body-worn camera footage, and agreed that he made the sound, but he testified that the spit landed on the floor in front of defendant. He testified that he spit in front of himself to "intentionally * * * agitate the officer[.]"

¶ 23    On cross-examination, defendant admitted that he told officers that he should and would spit on them, and then he spat. Defendant testified however that he spat on the floor, and denied that he spat in the direction of the officers.

¶ 24    After closing arguments, the circuit court found defendant guilty of the aggravated battery of a peace officer. The court found Officers Perez and Espinosa to be credible witnesses and that

their testimony was corroborated by the body-worn camera footage. In finding defendant's testimony that he did not spit on the officer not credible, the court stated that defendant had:

"no obligation to testify but the defendant chose to testify freely and voluntarily. He did so. The defendant testified that he was in the processing area, that he admits to spitting, and he admits that he intended to agitate the officer, that's why he spit. What the defendant denies is *** spitting on the officer. I find that last part not credible. Why else would he spit? If he's going to agitate the officer he's going to spit on the officer to insult or provoke. By the defendant's own admission, it was to agitate the officer. So, the defendant's denial of spitting on the officer while admitting he did spit, I don't find that to be credible."

¶ 25  In defendant's motion for a new trial, defendant argued, as relevant to this appeal, that the court erred in denying his motion to suppress a custodial statement because the statement was made before he was "provided with his rights as afforded by *Miranda*." The defendant also asserted that the State "did not provide potentially exculpatory evidence in the form of complaints of police misconduct" by Officers Perez and Espinosa, and "upon information and belief, Officer Espinosa was the subject of one complaint that was sustained and resulted in discipline."

¶ 26  The court denied defendant's motion for a new trial. Regarding defendant's argument about the police complaints, the court stated that there could be situations in which such a claim would be meritorious, but in this case, the incident was "captured on body cam" and the court did not believe "there would have been a difference with or without those materials."

¶ 27  At the subsequent sentencing hearing, the court sentenced defendant to the minimum three years in the Illinois Department of Corrections, finding that sentencing defendant to more than the minimum term of incarceration would "not do justice." The court, however, denied defendant's

request for probation because it would "deprecate the seriousness" of defendant's actions in spitting on a police officer.

¶ 28    Defendant filed a timely notice of appeal. In this court, defendant contends that the court committed plain error by failing to "apply judicial estoppel" to exclude defendant's statement, and that his trial counsel was ineffective for failing to use "readily available police misconduct records" to impeach the two officer witnesses.

¶ 29    Defendant first contends that the court erred in admitting evidence of his statement as captured by the audio on the officer's body-worn camera, because the State had previously informed the court and the defense that it would not introduce a statement from defendant. Defendant contends that the court should have applied the doctrine of "judicial estoppel" to prevent the State from changing its position as to whether defendant's statement would be used at trial.

¶ 30    Initially, the State asks this court not to review defendant's argument because the issue was procedurally defaulted by defendant's failure to raise the issue of judicial estoppel with specificity when he objected to the use of his statement, by failing to include the issue in a posttrial motion, and by acquiescing to the court's proposed remedy of entertaining a motion to suppress the statements during the trial. Defendant acknowledges that the doctrine of judicial estoppel "was not explicitly invoked by name" in the trial court, but he maintains that he sufficiently raised the doctrine when defense counsel "point[ed] out the State's inconsistent representations and the procedural unfairness of those representations." Defendant recognizes, however, that the "issue was not preserved" because his posttrial motion "addressed the State's custody argument rather than the underlying issue of prosecutorial inconsistency." Accordingly, defendant asks this court to review the issue under plain error "to address this fundamental procedural unfairness."

¶ 31    The plain error doctrine permits a reviewing court to consider an unpreserved error when

a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant carries the burden of persuasion under both prongs of the plain error rule. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). The first step in a plain error analysis is to determine whether a clear or obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21; *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 32    The doctrine of judicial estoppel "provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding." *People v. Caballero*, 206 Ill. 2d 65, 80 (2002) (Internal quotations and citation omitted). "The doctrine of judicial estoppel rests not upon due process concerns, but upon public policy which upholds the sanctity of the oath and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings." *Id.* (Internal quotations and citation omitted).

> "Five elements are generally required for the doctrine of judicial estoppel to apply: the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Id.*

¶ 33    "This doctrine is an extraordinary one that should be applied with caution." *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 76. Even if all five factors are found present, the trial court must then exercise its discretion in deciding whether to apply judicial estoppel. *Seymour v. Collins*, 2015

IL 118432, ¶ 47. "[E]ven where the above prerequisites are found, the party's inconsistent positions must have resulted from an intent to deceive or mislead, rather than inadvertence or mistake." *Duniver v. Clark Material Handling Co.*, 2023 IL 128141, ¶ 23.

¶ 34    A court's determination on whether to apply judicial estoppel is reviewed under the abuse of discretion standard. *People v. Palmer*, 2021 IL 125621, ¶ 74. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Seymour*, 2015 IL 118432, ¶ 47. Defendant, however, asks this court to review the issue *de novo*, contending that the record shows that the circuit court failed to review the elements of judicial estoppel. Nevertheless, this court need not resolve which standard of review applies, as our decision would be the same under any standard.

¶ 35    Defendant's claim that the trial court should have applied judicial estoppel to prevent the State from introducing his statement at trial can be easily resolved because the State's allegedly inconsistent statements occurred in the same proceeding, and not "in separate judicial proceedings" as required to apply the doctrine. *Caballero*, 206 Ill. 2d at 80

¶ 36    In defendant's opening brief, he first asserted that because the State first made the representation "during the pretrial phase" and later changed its position "mere moments before the trial commenced," the State's "contradictory positions" should be found to have occurred in "separate judicial *** proceedings." Defendant maintained that the "question of applying judicial estoppel within the context of a singular case does not appear to have been addressed in Illinois," and requested that this court follow other jurisdictions who have found the doctrine applicable in "separate phases of the same case."

¶ 37    In response, the State points out that the Illinois Supreme Court has previously considered and rejected a defendant's attempt to invoke the doctrine of judicial estoppel where the State's

allegedly inconsistent positions occurred during proceedings before the appellate court and the supreme court in the same case. In *People v. Jones*, 223 Ill. 2d 569, 598 (2006), the defendant argued that the State should not be permitted to take the position that the charge imposed by section 5-9-1.1(c) is a fine in the supreme court, because the State had previously argued that the charge was a fee in a footnote in its appellate court brief. Recognizing that the defendant was attempting to invoke the doctrine of judicial estoppel, the Illinois Supreme Court found that the doctrine was inapplicable, in part, because "the State's two positions were not adopted in *separate* proceedings. The appeal before this Court is a continuation of the proceedings before the appellate court and the proceedings before the circuit court." *Jones*, 223 Ill. 2d at 598 (emphasis in original). The State argues that the supreme court's holding that appeals from a trial are not considered a separate proceeding, necessarily means that "the trial itself, including pretrial litigation, is not a separate proceeding."

¶ 38    In defendant's reply brief, defense counsel acknowledges that the defense's prior assessment of the state of Illinois law was "incorrect." While defendant now concedes that, under *Jones*, the representations in this case were not made in separate proceedings, he continues to maintain that his "overall claim still has merit" because "all of the five prerequisites need not be present in order for judicial estoppel to apply."

¶ 39    Although this court has noted that judicial estoppel is a flexible doctrine, and that "not every requirement * * * will necessarily apply under the circumstances of a particular case," (*Smeilis,* 2012 IL App (1st) 103385, ¶ 46), this court has found no case in which the doctrine has been applied in Illinois where the two allegedly inconsistent positions have been taken in the same proceeding. To the contrary, as noted above, our supreme court has instructed that judicial estoppel "does not apply" to claims of inconsistent representations made in the same proceeding. *Jones*,

223 Ill. 2d at 598; see also *Seymour*, 2015 IL 118432, ¶ 36 ("Judicial estoppel applies in a judicial proceeding when litigants take a position, benefit from that position, and then seek to take a contrary position *in a later proceeding*.") (Emphasis added); *Farmer v. Country Mutual Insurance Co.*, 365 Ill. App. 3d 1046, 1052 (2006) (the allegedly inconsistent positions "were not made in separate proceedings, as required for the doctrine of judicial estoppel to apply."; *Horwitz v. Bankers Life & Casualty Co.,* 319 Ill. App. 3d 390, 400–01 (2001) ("all of the actions and statements upon which plaintiff bases her argument were made in this action, and therefore, the separate proceedings requirement is not met."). Since the allegedly inconsistent positions were not taken in separate proceedings, judicial estoppel "does not apply" and the trial court did not err in failing to apply the doctrine.

¶ 40    Moreover, even if defendant was not required to show that the representations were part of separate proceedings, his claim also fails because the State's positions were not inconsistent, and any possible inconsistency by the State is attributable to "mistake or inadvertence" and not an "intent to deceive or mislead." *Duniver*, 2023 IL 128141, ¶ 23.

¶ 41    The record in this case provides that at the January 19, 2024, hearing, defendant raised the issue with the court that he was "never read [his] *Miranda* rights *** and [he] gave a statement." The APD responded that there was no "confession or admission to anything in this case," and the ASA agreed that the State was not intending to use a statement against defendant. Then later, on April 5, 2024, a different ASA explained that the State did intend to admit the audio from the officers' body camera footage, and that when a different ASA had represented that the State was not going to introduce any "statements" from defendant at the prior hearing, he understood the parties to be discussing custodial statements in response to police questioning.

¶ 42    In this context, the record supports the conclusion that the two prosecutors' statements were

not factually inconsistent where they were made in reference to different types of statements. Importantly, the court never found that the State's "intent [was] to deceive or mislead" when it had previously stated that it would not introduce a statement from defendant. At most, any inconsistency in the State's positions was based on "mistake or inadvertence," which does not provide a basis for the application of judicial estoppel. *Id*.

¶ 43 Finally, we reject defendant's argument that he sufficiently established the fifth element of a judicial estoppel, that the State "succeeded in the first proceeding and received some benefit from it." *Caballero*, 206 Ill. 2d at 80. Defendant contends that the State "received the benefit on avoiding having to respond to or participate in the *pro se* motion to suppress which [defendant] had indicated he planned to file." The record indicates, however, that defendant's claim that the statement should be suppressed because it was made in violation of *Miranda* was heard, argued by both parties, and rejected by the trial court—a finding that defendant does not challenge in this appeal. At most, the hearing on defendant's desired motion to suppress may have been delayed, but the State did not avoid having to participate in that hearing by its earlier statement.

¶ 44 In these circumstances, we cannot conclude that the trial court erred in failing to apply judicial estoppel doctrine, much less that it committed the kind of "clear or obvious" error necessary to find plain error. *Piatkowski*, 225 Ill. 2d at 565.

¶ 45 Defendant next argues that his trial counsel was ineffective for failing to impeach Officers Perez and Espinosa with "publicly available records" showing that each officer had a complaint filed against him "for conducting an illegal search," and that Officer Espinosa's complaint had been sustained and resulted in an 11-day suspension. Defendant characterizes defendant's trial as a "pure credibility contest," and asserts that, "[h]ad counsel impeached both officers with evidence of their willingness to conduct illegal searches, thus demonstrating a pattern of constitutional

violations and willingness to violate the law, the trial court's credibility assessment could well have favored [defendant]'s version of events."

¶ 46    The United States Constitution and Illinois Constitution both guarantee criminal defendants the right to counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. That right includes the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims of ineffective assistance of counsel are governed by the two-prong standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under this standard, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced him. *Id.* To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" by overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687-88. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant's failure to establish either prong of the *Strickland* test is fatal to an ineffective assistance claim. *People v. Webb*, 2023 IL 128957, ¶ 21.

¶ 47    As an initial matter, the State asks this court to decline to review this issue, because the "record is not sufficiently complete to resolve it." The State points out that decisions regarding whether and how to impeach witnesses are matters of trial strategy, and that an inquiry into counsel's trial strategy may be better suited for collateral proceedings. See *People v. Veach*, 2017 IL 120649, ¶ 46 ("ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim).

¶ 48    The State also contends that defendant's issue is better suited to collateral proceedings, because he relies on evidence outside the record to support his contention that trial counsel's alleged failure to obtain the officers' complaint history was unreasonable. Specifically, defendant argues that the officers' disciplinary records were easily obtainable because a "quick online search of each officer's name and city of employment" retrieves evidence of the complaint records "within the first five results, as of the writing of [defendant's opening] brief." Defendant contends that this court should take judicial notice of appellate counsel's Google search results, because they are "not being cited for their substance, which was not before the trial court, but rather to demonstrate the ease of their discovery, a readily verifiable fact."

¶ 49    We agree with the State that defendant's appellate counsel's Google results should be not be considered because they were not before the trial court, and because they do not present the kind of readily discernible fact of which we may take judicial notice. See *People v. Chambers*, 2016 IL 117911, ¶ 94 n.3 (judicial notice is permissible only for "matters that are readily verifiable from sources of indisputable accuracy"). Importantly, appellate counsel's Google search results from September 2025 do not bear on the question of whether trial counsel was unreasonable for allegedly failing to discover them at the time of defendant's trial in April of 2024. Nevertheless, for the reasons that follow, we find that the record is sufficiently complete to resolve defendant's claim.

¶ 50    Because a "claim of ineffective assistance of counsel cannot be sustained on the basis of counsel's failure to offer inadmissible evidence," a threshold question is whether the evidence of the officers' alleged history would have been admissible at trial. *People v. Denson*, 250 Ill. App. 3d 269, 281 (1993).

¶ 51    Our courts have repeatedly held that "[d]ecisions concerning which witnesses to call at trial

and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79 (citing *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002)). This includes decisions concerning whether and how to impeach witnesses. *People v. Madej*, 177 Ill. 2d 116, 148-49 (1997); *People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997). "The manner in which to cross-examine a particular witness involves the exercise of professional judgment which is entitled to substantial deference from a reviewing court." *Pecoraro*, 175 Ill. 2d at 326-27. A defendant can prevail on an ineffectiveness claim only by showing that counsel's approach to cross-examination was objectively unreasonable. *Id.* Arguing that cross-examination "might have been handled differently" does not show that counsel's approach fell outside the wide range of reasonable professional assistance and, accordingly, is insufficient to satisfy the first prong of *Strickland*. *Id.* at 327.

¶ 52   Although a defendant has the right to inquire into a witness' bias, interest, or motive to testify falsely (*People v. Davis,* 185 Ill.2d 317, 337 (1998)), evidence used to impeach must give rise to an inference that the witness has something to gain or lose by his or her testimony (*People v. Coleman*, 206 Ill. 2d 261, 278 (2002)). "[E]vidence showing bias must be direct and positive, not remote or uncertain." *Id.* at 279. Evidence that an officer was alleged to have committed "some breach of duty unrelated to the defendant's case is not admissible to impeach the officer." *Id.*

¶ 53   In this case, the complaints at issue do not provide any inference that the officers would have the motive to testify falsely at defendant's trial. Both complaints allege that the officers conducted an "illegal search." Defendant, however, has not alleged that the officers conducted an illegal search or that they engaged in any other misconduct. Instead, defendant contends that evidence that the officers previously conducted an illegal search show that the officers are "willing[ ] to violate the law," and accordingly, that they may have testified falsely. Defendant's speculation

that both officers might testify falsely based on a single unrelated complaint is too remote and uncertain for those complaints to be admissible as impeachment evidence. See *id.*; *People v. Collins*, 2013 IL App (2d) 110915, ¶ 19 ("defendant's argument that [the] [o]fficer would testify falsely to avoid any further discipline is unsupported speculation that is remote and uncertain."); *Coleman,* 206 Ill. 2d at 279 (no error in barring cross-examination of an officer regarding pending civil suits alleging misconduct, because the suits did not concern the officer's actions at issue in that case); *Williams,* 267 Ill. App. 3d at 87 (no error in barring evidence of officer's disciplinary record where those records were not relevant to whether defendant committed a battery and resisted arrest).

¶ 54 Because the complaints against the officers would not have been admissible to impeach their testimony, counsel cannot be ineffective for failing to use them. See *People v. Boyd*, 2021 IL App (1st) 182584, ¶ 64 ("Refraining from performing a futile act is not ineffective assistance of counsel.").

¶ 55 Finally, even if we could find that trial counsel performed deficiently, defendant has suffered no prejudice from counsel's failure to impeach the officers with the complaints when, as the trial court stated in ruling on counsel's motion for a new trial, the court's decision would have been the same "with or without those materials." See *People v. Rosenthal*, 394 Ill. App. 3d 499, 511 (2009) ("A defendant satisfies the second prong of *Strickland* if he can show that a reasonable probability exists that, had counsel not erred, the trier of fact would not have found him guilty beyond a reasonable doubt.").

¶ 56 As the trial court explained, the incident in this case was captured on the officers' body worn cameras, which undermines defendant's argument that the complaints would have impeached the officer's testimony. Both officers testified consistently with the incident as captured

in the video footage, and although the cameras were facing away from defendant at the time the spitting noise can be heard, both officers testified that defendant spit on Officer Perez. Additionally, in defendant's testimony, he admitted spitting but claimed that he spit in front of himself, and not on Officer Perez. The footage captured by Officer Espinosa's body-worn camera, however, shows Officer Perez wiping his left cheek after the spitting sound, corroborating his testimony that defendant's spit hit him on the left side of his face. In these circumstances, there is no reasonable probability that the court would not have found defendant guilty if the officers had been impeached with the complaints. *Id.*

¶ 57    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 58    Affirmed.